# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
        **Plaintiff,**

vs.                                      No. 18-CR-2945 WJ

SIRAJ WAHHAJ,
        **Defendant.**

## DEFENDANT SIRAJ WAHHAJ'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR PRETRIAL RELEASE

COMES NOW, Defendant Siraj Wahhaj, by and through his counsel of record, Thomas Clark, Esq., and Erlinda O. Johnson, Esq., and hereby respectfully submits the following reply to the government's response to defendant's emergency motion for pretrial release:

1.      In his emergency motion, Mr. Wahhaj advanced multiple arguments based on information that supports his release pending trial.

2.      The Government's response does not take into consideration the possible complications from contracting covid-19 and the danger Mr. Wahhaj faces now and if he were to contract the virus again.

3.      The current medical crisis has inevitably put all detainees at risk and has been considered by numerous courts throughout the country. As previously noted, "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided." *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020). Release protects not just the defendant, but the community. *See United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and

"real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement").

4.     In order to minimize Mr. Wahhaj's risks of complications which may develop from his covid diagnosis and a possible re-infection, this Court must allow for his release to the third party custody of the La Pasada Halfway House, with electronic monitoring, home confinement and supervision by pretrial services.

5.     The Cibola Correctional Center and any Bureau of Prisons facility is not a closed hermetic system: staff shuttle in and out of the facility around the clock. And any individuals – such as staff – can carry the virus for days without showing any symptoms. Regardless of well-intentioned screening efforts, the virus will continue to spread throughout the facility.

6.     The Government also contends that there is nothing to worry about because the Cibola Correctional Center has the outbreak of COVID-19 cases under control. However, it is important to note that the Cibola Correctional Center's measures did not prevent the tremendous outbreak of covid cases we have seen, to date. Also, the preventative measures undertaken by the facility amount to punitive and draconian measures.  According to Mr. Wahhaj, inmates are locked down in their cells the vast majority of the time. While they have been given a cloth mask, hygiene items are often scarce. It is unknown if recovered inmates continue to be housed with ill inmates. The facility does little to address the medical needs of those inmates who are covid-19 positive. In fact, according to Mr. Wahhaj, inmates are sometimes provided little to no fluids and simply left to their own devices in isolation cells.

7.     The Supreme Court has held that exposure to environmental threats to an incarcerated person´s physical wellbeing, where exposure is preventable, can constitute a

violation of the Eighth Amendment´s prohibition against cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 28 (1993).

8.      Mr. Wahhaj retains his Eighth Amendment right to be free from cruel and unusual punishment. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). Under the Eighth Amendment, the Government must provide criminal detainees with basic human needs, including reasonable safety. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). The Government violates the Eighth Amendment if it confines a criminal detainee in unsafe conditions. *Id*. at 33. Moreover, the Government may not "ignore a condition of confinement that is sure or very likely to cause serious illness." *See id*. at 32. Indeed, the Supreme Court has concluded that, where prisoners in punitive isolation were crowded into cells and some of them had infectious maladies, "the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed." *Helling*, 509 U.S. at 33.

9.      Mr. Wahhaj has a constitutional right to be free from conditions of confinement that "pose an unreasonable risk of serious damage to [his] future health." *Id*. at 35. Mr. Wahhaj is entitled to protections from conditions of confinement that create a serious risk to health or safety, including through release from custody when necessary. *Brown v. Plata*, 563 U.S. 493, 531-32 (2011). Given the drastic change in conditions since the Court first visited the issue of release, this Court must now consider Mr. Wahhaj's release in light of the current deadly pandemic.

10.      Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3156, a court generally cannot detain an accused unless it finds "that no conditions or combinations of conditions will reasonably assure the appearance of the person as required and the safety of any

other person and the community." 18 U.S.C. § 3142(e) and (b). The Bail Reform Act of 1984,

18 U.S.C. §§ 3141, et. seq., requires the release of a person facing trial under the least restrictive

condition or combination of conditions that will reasonably assure the appearance of the person

as required and the safety of the community. 18 U.S.C. § 3142(c)(2); *United States v. Motamedi*,

767 F.2d 1403, 1405 (9th Cir. 1985).

11.     Only in rare circumstances should release be denied, and doubts regarding the

propriety of release should be resolved in the defendant's favor. 767 F.2d at 1405. Section

3142(g) specifies the various factors that must be considered in determining whether there are

conditions of release that will reasonably assure the appearance of the person and the safety of

the community. 18 U.S.C. § 3142(g). These factors are: (1) the nature and seriousness of the

offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's

character, physical and mental condition, family and community ties, past conduct, history

relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the

danger to any person or the community that would be posed by the defendant's release. *Id.;* 767

F.2d at 1407. Of these factors, the weight of the evidence is the least important, and the statute

neither requires nor permits a pretrial determination of guilt. *United States v. Winsor*, 785 F.2d

755, 757 (9th Cir. 1986); 767 F.2d at 1408.

12.     While there is a presumption of detention in this case, the burden remains on the

United States to show that Mr. Wahhaj is a flight risk or a danger to the community. *See United

States v. Villapudua-Quintero*, 308 Fed. Appx. 272, 273 (10th Cir. 2009)("Once [a] presumption

is invoked, the burden of production shifts to the defendant," but "the burden of persuasion

regarding risk-of-flight and danger to the community always remains with the government.").

Once the presumption is invoked, the burden shifts to the defendant to show that there are

conditions that will reasonably assure appearance of the defendant and safety of the community. The defendant's burden is not heavy and only requires that some evidence be produced. *United States v. Stricklin*, 932 F.2d 1353 (10th Cir. 1991).

13.     A judicial officer may only detain a defendant if the government proves by a preponderance of the evidence that the defendant poses a risk of flight such that no condition or combination of conditions will reasonably ensure the defendant's presence at trial. The standard for ensuring appearance is reasonable likelihood, not a guarantee of appearance. *See* 18 U.S.C.  § 3142(b)-(c), (e). It should be noted that even if there is a serious flight risk, release may not be denied unless there are no conditions which would reasonably assure the appearance of the defendant.  *United States v.  Sabhnani*, 493  F.3d 63, 75 (2nd Cir. 2007).  "From the passage of the Judiciary Act of 1789 [ ], to the present [ ], federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail." *Stack v.  Boyle*, 342 U.S. 1,4 (1951).  The Bail Reform Act does not change this philosophy.  Indeed, there is a preference for pretrial release*. See* 18 U.S.C. § 3142(b); *Stack v. Boyle*, 342 U.S. 1,4 (l951) (defendant charged with noncapital offense shall be released on bail if defendant gives adequate assurance that he will appear at trial and submit to sentence if convicted).

14.     Here, the government argues that the its case against Mr. Wahhaj is strong. However, the strength of the government's case is the least important of the factors the Court must consider. Nevertheless, the strength of the government's case, here, is debatable. The evidence on which the government relies for the terrorism related charges consists of unreliable statements made by minor children during highly suggestive interviews. There is absolutely no evidence that links Mr. Wahhaj to any terrorist organizations, alleged terrorists or any terrorist related activity. While Mr. Wahhaj's choice of residence in 2018, and religious practices were

unorthodox, they were certainly not terroristic in nature. Mr. Wahhaj maintains his innocence and submits the he was not involved with or connected to any terrorist related activity or plans. Mr. Wahhaj is presumed innocent and as such he has a great liberty interest in avoiding pretrial detention. Thus, the district court must dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act. *United States v. Fernandez-Alfonso*, 818 F.2d 477, 478 (9th Cir. 1987).

15.     On the issue of risk of flight, the government only argues that Mr. Wahhaj poses a risk of flight. Notably, Mr. Wahhaj does not have a criminal history and there is no evidence that if released under strict conditions, he would flee. A defendant's mere opportunity for flight, without evidence that he is likely to flee, cannot serve as the basis for pretrial detention. *United States v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996); *see also United States v. Alston*, 420 F.2d 176, 178 (D.C. Cir. 1969) ("The law requires reasonable assurance but does not demand absolute certainty."); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention.").

16.     Other than speculation, there is no evidence that Mr. Wahhaj will flee if released, under strict conditions, to the third-party custody of the halfway house, with electronic monitoring and home detention. As previously noted, even if there is a serious flight risk, release may not be denied unless there are no conditions which would reasonably assure the appearance of the defendant. *United States v. Sabhnani*, 493 F.3d 63, 75 (2nd Cir. 2007). Release on electronic monitoring with home detention will ensure Mr. Wahhaj will not flee or pose a danger to the community.

17.     On the issue of dangerousness, the government relies only on the charges in the indictment to argue Mr. Wahhaj is a danger to the community. However, the reality is that the

charges herein are trumped up and reliant on a distorted interpretation of statements made by

minors. Simply, there is no evidence the government can produce that Mr. Wahhaj provided

financial support to suspected terrorists. Moreover, the allegation that Mr. Wahhaj had a plan to

attack governmental institutions and target federal agents is the creation of FBI agents'

fantastical and unsupported theory, years in the making. Quite simply, Mr. Wahhaj does not pose

a danger to the community and this Court must order his release.

Wherefore, for the foregoing reasons and the reasons set forth in Mr. Wahhaj's

emergency motion for release, Mr. Wahhaj respectfully moves this Honorable Court for an order

releasing him from custody.

Respectfully submitted,

Electronically filed 8/17/20
Thomas Clark
Counsel for Mr. Wahhaj

/s/ Erlinda O. Johnson
Erlinda O. Johnson
Counsel for Siraj Wahhaj

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August 2020, I filed the foregoing
motion electronically through the CM/ECF system, which caused opposing
counsel for the Government to be served by electronic means, as more fully
reflected on the Notice of Electronic Filing.

Electronically filed 4/14/20
Erlinda O. Johnson
Counsel for Mr. Wahhaj