# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.                                          18-CR-02945-WJ

SIRAJ WAHHAJ,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS BASED ON AN ALLEGED VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

**THIS MATTER** comes before the Court following Defendant Siraj Wahhaj's Motion to Dismiss Based on a Violation of His Constitutional Right to a Speedy Trial (Doc. 350). About a year and a half ago, Defendant filed a similar motion (Doc. 231), which the Court summarily denied (Doc. 250) (the "Order"). With the COVID-19 pandemic still looming overhead, eighteen months have since passed, and Defendant has asserted this right four additional times, culminating in the instant motion. Having reviewed the pleadings and the applicable law, the Court again finds that the United States has not violated Defendant's Sixth Amendment right to a speedy trial. Therefore, the motion is hereby **DENIED**.

## BACKGROUND

The Government arrested Siraj Wahhaj ("Defendant") and his four co-Defendants on August 5, 2018 and initially charged them with conspiracy, unlawful possession of a firearm by an alien, and aiding and abetting. *See* 18 U.S.C. §§ 371, 922(g)(5) & 2 (Doc. 1). Subsequently, the Grand Jury returned a Superseding Indictment filed March 14, 2019 (Doc. 85) charging seven

counts.   Defendant Siraj Wahhaj and co-Defendants Jany Leveille, Hujrah Wahhaj, Subhanah

Wahhaj and Lucas Morton are charged in Counts 1-5[1] as follows:

> Count 1: Conspiracy to Provide Material Support to Terrorists;
>
> Count 2: Providing Material Support to Terrorists;
>
> Count 3: Conspiracy to Murder an Officer or Employee of the United States;
>
> Count 4: Conspiracy to Commit an Offense Against the United States; and
>
> Count 5: Possessing a Firearm While Unlawfully in the United States.

At some unspecified date following the Government's filing of charges, the private owner of the

site at which Defendants allegedly committed the alleged crimes demolished Defendants' so called

"family home" on the owner's property.[2] Before the demolition, however, the Government

preserved much evidence detailing the site. Considering the breadth of the conspiracy charges

made against all Defendants in Counts 1-5 of the Superseding Indictment combined with the

magnitude of discovery and potential evidence, the Court on October 2, 2018, granted an

unopposed motion and entered an unopposed order designating this case as complex (Doc. 49).

Following the superseding indictment, Defendants Leveille, Morton, Hujrah Wahhaj and

Subhannah Wahhaj filed motions to determine their competency. Shortly thereafter, all

Defendants—including Siraj Wahhaj, whose competence has never been in question—filed an

unopposed motion to stay these proceedings pending resolution of this issue, which the Court

granted on February 18, 2020. Doc. 192. Importantly, five months into the stay—twenty-three

months following Defendant's arrest—Defendant had a change of heart regarding the joint trial

and filed a motion on July 14, 2020, to lift the stay, arguing the Government had violated his Sixth

---

[1] Counts 6 and 7 of the Superseding Indictment involve allegations relating to the kidnapping resulting in the death of a minor child; however, Defendant Siraj Wahhaj is not charged in Counts 6 and 7.
[2] Located on private property not owned by Defendants, the site consisted of a small trailer, a moving truck, a firing range, and a system of tunnels and man-made caves in the ground.

Amendment right to a speedy trial. Doc. 231. The Court cannot help but notice that Defendant's change in litigation strategy—shifting from his agreement to a joint trial to later seeking a severance—followed four months after the entry of appearance by current counsel, Erlinda Johnson, Defendant's fifth attorney in this case. Accordingly, the Court denied the motion and thus, the stay has remained intact pending resolution of co-Defendants' competency evaluations. Doc. 250. In the eighteen months that have passed since Defendant's motion to the lift the stay, Defendant has filed four additional notices asserting his constitutional right to a speedy trial. *See* Docs. 298, 324, 341, 345. Overall, Defendant has been detained in federal custody awaiting trial for a total of forty-one months.

## DISCUSSION

The Sixth Amendment of the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To determine whether a trial delay violates a defendant's Sixth Amendment speedy trial right, federal courts must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Neither factor is determinative or necessary, but all four must be considered when determining whether a violation has occurred. *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010). Accordingly, the Court addresses each in turn.

### I.     Length of Delay

This factor requires a two-step analysis. First, the Court must determine as a threshold matter whether the delay exceeds one year; if so, the Court may proceed with conducting a full-fledged *Barker* analysis. *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). Defendant having been detained for forty-one months, the Court proceeds to the second step under this first

factor: assigning weight to the length of the delay, considering the "length of time" with the "complexity" of the case. *United States v. Nixon*, 919 F.3d 1265, 1270 (10th Cir. 2019). On this point, Defendant argues the delay is inexcusably long, citing primarily to *United States v. Margheim*, 770 F.3d 1312, 1326 (10th Cir. 2014). In *Margheim*, the Tenth Circuit held that this first factor weighed "entirely" in favor of the defendant—indicted with 29 others in a conspiracy—when 23 months had elapsed since the defendant's indictment. *Id.* Defendant argues that the instant circumstances are, in fact, more egregious than in *Margheim*—Defendant has endured a longer delay in a case involving fewer defendants.

Defendant's reliance on *Margheim* is unpersuasive. A factor weighing "entirely" in a defendant's favor does not necessarily accord it significant weight. The only question posed under the first factor in *Margheim* was whether the delay exceeded one year. *Id*. Because it did, the Tenth Circuit reasoned, this factor weighed "entirely" in the defendant's favor, compelling the Court to analyze the remaining factors. *Id.* The Tenth Circuit's length of delay analysis, a single paragraph, was rather expedient and omitted any reference to the case's complexity, despite the underlying case involving a conspiracy. *Id.* Nevertheless, both parties in the case at bar acknowledge that the Court must go a step further by assigning weight to the length of delay, balancing the "length of time" with the case's "complexity." *See Seltzer*, 595 F.3d at 1176 (10th Cir. 2010) ("[A] court should take into consideration the nature of the charges."); *Nixon*, 919 F.3d at 1270.

In the instant motion, however, Defendant overlooks the complexity of this case. In prior motions, Defendant has claimed that discovery includes "over 100,000-plus pages" and "numerous audio and video files, including files from Cell Phones, Laptops, Yahoo, Google, Facebook and other social media applications that do not translate well to paper." Doc. 68; Doc. 49 (Defendant's stipulation to this case's complexity). Against this backdrop, the Court previously held that the

4

complexity of the instant case compelled the finding that a two-year delay, despite being reasonable, weighed somewhat in Defendant's favor. Doc. 250 at 8. For the same reason, the Court similarly finds here that the forty-one-month delay—only eighteen of which Defendant has opposed—weighs ever so slightly in Defendant's favor. *Contra United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995). Nevertheless, the Court finds that a forty-one-month delay for a conspiracy case of this complexity and magnitude is not unreasonable. *See Barker v. Wingo*, 407 U.S. 514, 531 (1972) ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").

Therefore, the Court finds that this factor weighs in Defendant's favor with minimal weight.

## II.     Reason for Delay

Under this factor, "the court must assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." *United States v. Margheim*, 770 F.3d 1312, 1326 (2014). Importantly, the *Barker* Court created a sliding scale of sorts to evaluate the Government's blameworthiness in delaying trial:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531; *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006). Specifically, Defendant argues the reasons for delay here are analogous to "a more neutral reason such as negligence or overcrowded courts." *Barker*, 407 U.S. at 531. Defendant contends the Government was negligent in failing to progress Defendant's case in any reasonable way over the past eighteen months since his original request to sever his case. According to Defendant, the delay is

5

attributable to the Government, primarily due to the lengthy competency evaluation process associated with the co-Defendants.

For ease of analysis, the forty-one-month delay should be divided into two timeframes: Defendant's pre- and post-opposition to the joint trial. For the twenty-three months leading to Defendant's initial opposition, the Court has already explained the valid reasons justifying that portion of the delay, such as the COVID-19 pandemic and Defendant's initial agreement to stay these proceedings. Doc. 250 at 8–10. That part of the delay is not attributable to the Government. Instead, the crux of this analysis rests on the eighteen months following Defendant's first request to sever his case and proceed to trial. For this period of the delay, the Government has not deliberately or intentionally hampered Defendant in any way. Recognizing this, Defendant rests the brunt of his theory on an allegation of the Government's negligence, a neutral factor in the middle of the *Barker* sliding scale. From the Court's perspective, this eighteen-month delay traces primarily to three laborious and logistical hurdles: (1) the ongoing COVID-19 pandemic, (2) co-Defendants' competency evaluation process, and (3) newly appointed counsel to represent Defendant, each of whom was required to become familiar with all the complex aspects of this conspiracy case. None of these issues, however, are attributable to the Government.

First and stated in layman's terms, the "elephant in the room" is the ongoing and evolving Coronavirus Pandemic ("COVID-19"). COVID-19 has dramatically impacted every single aspect of preparing this case for trial. As this Country approaches the two-year anniversary of the onset of COVID-19, it has claimed the lives of over 850,000 Americans and has affected the manner in which individuals and institutions go about conducting business including the Federal Judiciary.[3] As if the complexity of an alleged conspiracy charging five individuals with terroristic type

---

[3] *See* Centers for Disease Control and Prevention, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last accessed on January 20, 2022).

activities wasn't enough, the looming threat of the ongoing pandemic has muddled each and every part of the litigation process. Starting with the CARES Act and continuing with numerous administrative orders ever since, trials in the District of New Mexico as well as nearly all other federal district courts throughout the United States have been suspended time and time again over the past two years due to the public health threats posed by COVID-19. *See* CARES Act § 15002(b)(3)(A). Just a few weeks ago, for example, the District of New Mexico continued all civil and criminal trials in the District through February 13, 2022. *In the Matter of Continuance of Civil and Criminal Jury Trials Due to Covid-19*, 22-mc-4 (D.N.M. Jan. 14, 2022). Not only has COVID-19 drastically hindered in-person communication and in-person hearings, but it has also resulted in a number of individuals in this case as well as many other cases contracting COVID-19, ranging from defendants to lawyers to judges and court officials to witnesses and to potential jurors.  All of this has transpired during the past two years of a pandemic that is not attributable either to the United States or the Defendant.  In the final analysis, the ongoing and pervasive COVID-19 pandemic is a factor and a force that Defendant cannot use to his advantage in this analysis. *See United States v. Wright*, 2021 WL 1063180 (D. Utah March 19, 2021) ("The need to protect the health of the public and trial participants, including the Defendant, during a deadly pandemic outweighs the rights of Defendant and the public to a speedy trial."); *United States v. Olsen*, 2022 WL 60361 (9th Cir. Jan. 6, 2022) ("[S]urely a global pandemic that has claimed more than half a million lives in this country . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health.").

Second, complicated issues of competency have been continually raised regarding co-Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton. To date, the Court has found Jany Leveille, Hujrah Wahhaj, and Subhanah Wahhaj competent to stand trial.

However, counsel for Defendant Morton has requested  a second competency evaluation and the Court has yet to rule on that issue. The Court continues to find that the competency evaluation process relating to the co-Defendants remains out of the Government's control and that overall, the Government has had minimal involvement with co-Defendants' competency evaluations.  It is a process more comparable to a "missing witness"—a factor the Supreme Court has decided "serve[s] to justify appropriate delay"—rather than "negligence" or "overcrowding courts," reasons which "rest with the government." *Barker*, 407 U.S. at 531.

Integral to this discussion is the importance of jointly trying this case. On February 18, 2020, the Court stayed these proceedings—to which Defendant originally agreed—pending his co-Defendants' competency evaluations. Docs. 189, 192. The principles underlying that decision continue to remain in effect, as recognized by the Court in its prior Order:

> Trial in this case (if it proceeds to trial) will involve a common set of operative facts relevant to the defendants' conspiracy with respect to those facts. Joint trial of the defendants in this case is both proper and necessary, and will "promote economy and efficiency" and avoid "multiplicity of trials without causing" "substantial prejudice to the right of the defendants to a fair trial."

Doc. 250 at 15 (citations omitted); *see also United States v. Gray*, 173 F.Supp.2d 1, 10 (D.D.C. 2001) (discussing general presumption in favoring joinder to "preserve judicial resources and permit the jury to have a complete view of the evidence as possible"). Severing this complex conspiracy case involving allegations of terroristic activities such as conspiracy to murder officials of the United States Government, and severing out separate trials for one or more individual Defendants this far into the case would involve unimaginable logistics—even without an ongoing pandemic—and would place an insuperable burden on the Court and the United States. The resolution of co-Defendants' competency issues is essential to the just and efficient adjudication of this case, and for this reason, the stay will remain in place until the resolution of such issues.

Lastly, since the inception of this case, Defendant has had a total of five Criminal Justice Act counsel appointed to represent him.  Former attorney Zachary Ives was appointed to represent Defendant on September 4, 2018, and subsequently motioned for appointment of co-counsel so Attorney Molly Schmidt-Nowara was appointed as co-counsel on November 28, 2018.  Zachary Ives ended his representation of Defendant on February 6, 2019, around the time he became a judge on the New Mexico Court of Appeals.  That same month Molly Schmidt-Nowara ended her representation of Defendant so Attorneys Shammara Henderson and Tom Clark were appointed to represent Defendant.   Former attorney Shammara Henderson ended her representation of Defendant on March 16, 2020, around the time she became a judge on the New Mexico Court of Appeals.  That same date Attorney Erlinda Johnson substituted as counsel for Defendant and presently, Defendant is represented by both Attorneys Johnson and Clark.

Whenever there is a change in defense counsel in a complex criminal conspiracy case like the one at bar, inevitably newly appointed defense counsel need time to become familiar with all aspects of the case so they can provide effective representation.  This case is no different. However, the Court readily acknowledges that any delay caused as a result of new counsel being appointed to represent the Defendant cannot be attributable to the Defendant nor the Government. The delay attributable to appointment of new counsel to represent Defendant occurred as a result of the fact that two of Defendant's former attorneys became judges on the New Mexico Court of Appeals.

Additionally, regarding the topic of newly appointed counsel, the Court has had to consider requests for appointment of new counsel by the co-Defendants and has granted in part requests for appointment of new counsel by the co-Defendants.  As stated above, in a multi-defendant complex conspiracy case like the one at bar, whenever defense lawyers come and go, that inevitably leads

to some delay.  To the extent that delay has been caused by co-Defendants' request for new counsel, that delay is not attributable to Defendant or the United States.

For these reasons, the Court finds that the "reason for delay" factor weighs strongly in favor of the Government.

### III.    Assertion of Right

In evaluating this factor, the Court must ask "whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Batie*, 433 F.3d at 1291. In so doing, the Court weighs the "frequency" and "force" of the assertions. *Barker*, 407 U.S. at 529. At the end of the day, "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531–32.

In its prior Order, the Court found that this factor weighed in the Government's favor, primarily because Defendant had waited nearly two years to assert his speedy trial right. Doc. 250 at 10. Eighteen months have since passed, and Defendant has submitted four additional notices asserting his right to a speedy trial all of which have occurred during the COVID-19 pandemic. Based on the past eighteen months alone, the Court agrees that the Defendant has clearly stated a desire to go to trial. Compared to relevant case law, asserting one's right to a speedy trial a total of five times within eighteen months evinces a desire to go to trial with dispatch. *See Jackson v. Ray*, 390 F.3d 1254, 1262–63 (10th Cir. 2004) (holding that this factor weighed in defendant's favor when he asserted the right once eight months prior to trial); *United States v. Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010) (holding that this factor weighed in defendant's favor when he asserted his speedy trial right twice within a few months).

Citing to *United States v. Stine*, the United States argues that waiting nearly two years for Defendant to assert his speedy trial rights alone deals a near fatal blow to the instant motion to dismiss. 664 Fed.Appx. 697, 702 (10th Cir. 2016). As an "unpublished" opinion, however, *United States v. Stine* does not carry the same precedential weight that a "published" circuit opinion carries.  Moreover, the defendant in *Stine* did not assert his speedy trial rights until his appeal, which is in sharp contrast to the case at bar where Defendant has asserted his right five times over the past eighteen months. In short, the idea that Defendant waited too long to assert his speedy trial rights does not properly account for the past eighteen months during which he asserted these rights with "force" and "frequency." *Barker*, 407 U.S. at 529. As such, the Court finds the United States' argument unavailing.

Therefore, this factor weighs in Defendant's favor in that he has clearly stated his desire to go to trial during the past eighteen months.

## IV.     Prejudice[4]

Finally, Defendant must make a particularized showing of prejudice. *Ray*, 390 F.3d at 1264. Under this prong, courts analyze three main interests: (1) preventing oppressive pretrial incarceration, (2) minimizing concern and anxiety to the defendant, and (3) most importantly, limiting the possibility that the defense will be impaired. *United States v. Gomez*, 67 F.3d 1515, 1522 (10th Cir. 1995). As Defendant argues all three interests, the Court addresses Defendants' claims in two strides, combining the first and second interests followed by the third.

First, Defendant argues he has suffered oppressive pretrial incarceration, concern, and anxiety. Detained for forty-one months now, Defendant remains unable to work, previously

---

[4] Under the first *Barker* factor, a defendant is relieved of this burden if there is evidence of extreme delay. *United States v. Black*, 830 F.3d 1099, 1121–22 (10th Cir. 2015) (citing *United States v. Hicks*, 779 F.3d 1163, 1168 (noting that a six-year delay would qualify as an extreme delay)). As in its prior Order, the Court again finds that the delay here is not extreme. *See* Doc. 250 at 11 n.3.

contracted COVID-19, and has been unable to see his family. While these assertions may very well be true, they do not support "particularized" findings of prejudice. Virtually all defendants awaiting trial in detention experience exactly what the Defendant claims he has suffered. Therefore, the Court does not assign much weight to these claims.

Second, Defendant contends the United States impaired his defense by demolishing Defendant's family home where the crimes allegedly occurred. Because of these alleged actions by the Government, Defendant argues that the jury and a hypothetical private investigator cannot visit the site. Despite bearing no burden of proof, Defendant argues that he will have a more challenging time establishing that the site was not a terrorist training camp.

Contrary to Defendant's assertions, the site that the Government alleges was a terrorist training camp was demolished by the private owner of the subject property after the Government brought charges against all five Defendants in this case. Crucially, the mountain of evidence obtained and preserved by the Government detailing the site before its destruction warrants two important conclusions. First, the preserved evidence vitiates any potential prejudice suffered by Defendant. The Court is not convinced that a private investigator would have uncovered anything not already preserved by the United States. Second, the preserved evidence leads the Court to believe that a field trip for the jury to physically inspect the site would be unnecessary. Additionally, the Court plans to conduct the jury trial in this case at the Pete V. Domenici United States Courthouse in Albuquerque, New Mexico.  The notion advanced by Defendant that the Court would allow the jury in this case to travel approximately 135 miles north to Taos, New Mexico is rank speculation.

Even assuming the site demolition prejudiced Defendant in any way, this type of prejudice is not the kind contemplated by the third—and most important—interest under this factor: the

possibility that the defense will be *impaired by trial delay*. *United States v. Gomez*, 67 F.3d 1515, 1522 (10th Cir. 1995). Importantly, the private owner demolished the site at some unspecified date following the Government's filing of charges against Defendant, but well before Defendant first asserted his right to a speedy trial. This action having been completed long in the past, the passage of time awaiting trial in no way exacerbates any prejudice resulting from the demolition of the site. In other words, the prejudice Defendant purportedly suffered the day after the demolition is the exact same prejudice Defendant now suffers a few years later. This is opposed to, say, a witness losing her memory—or witnesses becoming increasingly hard to track down—with the continual passage of time. In those situations, the passage of time itself is what erodes a defendant's ability to mount a defense. That is not the case here.

For these reasons, the Court finds that Defendant has not suffered particularized prejudice and thus, this factor weighs in the United States' favor. *See Castro v. Ward*, 138 F.3d 810, 820 (10th Cir. 1998); *United States v. Toombs*, 574 F.3d 1262, 1267 (10th Cir. 2009) ("Since the hindrance to the defense is the most important interest, and the defense was not significantly hindered here, the prejudice does not weigh in favor of [defendant]."); *United States v. Black*, 830 F.3d 1099, 1122 (10th Cir. 2015) (finding that the defendant could not show "specific, cognizable prejudice" having "spent well over two years of his life in a jail cell awaiting trial").

## CONCLUSION

Overall, the *Barker* factors weigh strongly in favor of the United States. First, the length of delay (eighteen months opposed, and forty-one overall) weighs in Defendant's favor with minimal weight. As the Court previously noted, much longer delays have not given rise to Sixth Amendment speedy trial violations. *See* Doc. 250 at 13; *United States v. Stephenson*, 2020 WL 3263445, at *2 (W.D.N.Y. June 17, 2020) (compiling cases); *United States v. Ghailani*, 733 F.3d 29, 46–49 (2d Cir. 2013) (five-year delay); *United States v. Blanco*, 861 F.2d 773, 777–80 (2d Cir.

1988) (ten-year delay). Second, the principal reasons for the delay—the ongoing COVID-19 pandemic, co-Defendants' competency evaluations, and Defendant and co-Defendants receiving new counsel, as well as the complexity of the case and the volume of discovery—weigh strongly in the United States' favor. Third, Defendant's assertion of his speedy trial right (five times over the past eighteen months) weighs somewhat in Defendant's favor. Fourth, Defendant has not suffered any particularized prejudice, weighing this factor in the Government's favor. Thus, the Court again finds that has been no violation of Defendant's Sixth Amendment right to a speedy trial.

**THEREFORE, IT IS SO ORDERED** that the Defendant's motion (Doc. 350) is hereby **DENIED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE