**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                     Case No. 1:18-cr-2945-WJ

SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ, and
SUBHANAH WAHHAJ,

      Defendants.[1]

**MEMORANDUM OPINION REGARDING ALLEGED
INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

      **THIS MATTER** is before the Court, *sua sponte*, following the sentencing hearings for

Hujrah Wahhaj, Subhanah Wahhaj, and Siraj Ibn Wahhaj held on March 6, 2024. At the hearing,

Defendants used their sentencing allocutions to levy allegations against counsel and lambast the

criminal justice system for conspiring to violate their rights. While these three Defendants are

certainly entitled to their beliefs and opinions regarding the criminal justice system, they are not

entitled to their own set of facts—especially on the issue of effectiveness of counsel.

      Despite the Court's strong admonition to Defendant Siraj Ibn Wahhaj about the perils of

waiving his right to counsel and proceeding *pro se*, and despite the Court having appointed Mr.

Wahhaj two extraordinarily experienced and well qualified Criminal Justice Act Attorneys to

represent him, he knowingly, intelligently, and voluntarily waived his right to counsel and chose

---

[1] Jany Leveille and Lucas Morton, the other two co-Defendants, are not included in the caption of this case. Some context is needed to explain why. First, Jany Leveille entered into a plea agreement with the United States for a specific sentencing range of 12–17 years (**Doc. 917**). During her sentencing allocution, she was remorseful and accepted responsibility. Likewise, *pro se* Defendant Lucas Morton did not trash counsel or repeat the baseless claims uttered by his co-Defendants at sentencing. Rather, Defendant Morton's sentencing allocution was brief and only mentioned his desire for appellate counsel to help him file additional motions.

to represent himself *pro se*. In granting Mr. Wahhaj's request to represent himself, the Court appointed experienced Criminal Justice Act counsel to serve as stand by counsel for Mr. Wahhaj.

Now that Mr. Wahhaj has been sentenced, he has or will be appointed appellate counsel to pursue his appeal to the United States Court of Appeals for the Tenth Circuit. Considering Mr. Wahhaj knowingly, intelligently, and voluntarily waived his right to counsel and represented himself *pro se*, the Court cannot envision a scenario where he can credibly assert an ineffective assistance of counsel claim—assuming he would even want to raise such an argument. Consequently, this Memorandum Opinion will focus on comments made by Defendants Hujrah Wahhaj and Subhanah Wahhaj (hereinafter collectively referred to as "Defendants") at sentencing when they exercised their rights to allocate and verbally made comments to the effect that their court appointed Criminal Justice Act lawyers were ineffective. The Court notes that Defendants were represented by counsel during the entirety of this case.

Specifically, Defendants alleged speedy trial violations, outrageous Government conduct, violations of their Fourth Amendment rights, and more. As such, the Court believes a summary of the history of this case, filings submitted by Defendants' counsel, and a review of this Court's rulings are appropriate. To the extent Defendants' statements somehow could be construed as oral motions requesting relief from this Court, those requests are **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

Defendants were charged by criminal complaint (**Doc. 1**) on August 31, 2018. Then, in September 2018, Defendants were indicted by a federal grand jury (**Doc. 25**). An unopposed motion designating the case complex was filed on October 2, 2018 (**Doc. 47**)—which the Court granted the next day (**Doc. 49**). From October 3, 2018, onward the case was designated as complex for purposes of the Speed Trial Act, 18 U.S.C. § 3161.

A Superseding Indictment was filed in March 2019 (**Doc. 85**). In the months following the Superseding Indictment, Defendants Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj filed motions to determine their competency (**Docs. 111, 174, 176, 179**). In February 2020, all Defendants through counsel jointly moved this Court to enter a stay pending the resolution of the competency issues (**Doc. 189**), which the Court granted (**Doc. 192**).

A few weeks after the issuance of the stay, the COVID-19 pandemic broke out. The U.S. District Court for the District of New Mexico, like every other federal district court in the nation, issued Administrative Orders on the handling of jury trials and speedy trial calculations. Approximately twenty months elapsed before the stay was lifted (**Doc. 464**) on October 14, 2022. Although this case predated and postdated the pandemic, the reason for the stay was the resolution of competency issues—although the pandemic certainly impacted the time frame for resolving the competency issues. All competency issues were resolved by October of 2022 and, one month later, trial was set (**Doc. 529**) for September 2023.

Further infused in this case's history is the fact Defendants plus the other three Co-Defendants, at various times, were represented by a total of twenty-two different[2] attorneys—

---

[2] At sentencing, Defendants also bragged about reporting several of their attorneys to the disciplinary board. Despite complaints of speedy trial violations, Defendants' acts of filing professional misconduct complaints resulted in conflicts and withdrawals of counsel that thereby resulted in delay. Of course, filing complaints is allowed. And Defendants certainly have the right to do so. But, as the Court frequently explained, engaging in this type of conduct creates conflicts of interest with counsel and results in further delays. Yet, this Sisyphean task continued—as orders granting withdrawal of counsel were rolled uphill only to have more complaints that spurred future withdrawals come rolling back down.

   To this end, it is disingenuous for the Defendants to file frivolous disciplinary board complaints to manufacture a conflict with counsel only to later complain their speedy trial rights are being denied. Upon review of the docket, it appears Hujrah Wahhaj refused to meet with one attorney (**Doc. 313**) and filed a disciplinary board complaint against another (**Doc. 414**). Subhanah Wahhaj wrote a letter (**Doc. 221**) explaining she did not want to be represented by her then-attorneys. And she also threatened her counsel (**Doc. 315**). Lucas Morton filed a disciplinary board complaint against his counsel (**Doc. 352**). He also filed a motion to dismiss for ineffective assistance of counsel (**Doc. 475**) that the Court struck (**Doc. 479**) because he was represented by counsel. Similarly, Siraj Ibn Wahhaj, before being *pro se*, filed a motion asserting ethical complaints against his counsel (**Doc. 745**).

requiring the Court to issue numerous Orders (**Docs. 78, 235, 271, 354, 357, 433, 522, 549, 786**) and Memoranda Opinions (**Docs. 363 & 709**) resolving these issues.

After the conclusion of the competency proceedings and setting of a trial date, more than 500 docket entries were filed. Of note, the Court ordered *Lafler-Frye* hearings (**Docs. 619, 622, 638, 642, 643, 644, 652, 653, 669**), held suppression hearings (**Docs. 596, 617, 696, 707**), conducted a *James* hearing (**Docs. 788, 875, 878**), and had several *Daubert* hearings (**Docs. 787, 844, 857, 876, 877, 881, 886, 888, 889, 923, 924**).

In sum, after the September 2023 trial date was set, the Court issued seventeen substantive Memoranda Opinions and Orders (MOOs) resolving Defendants' various motions, including:

- MOO Denying Motion to Dismiss for "Missing Element" — **Doc. 543**
- MOO Granting in Part Defense Motion to Exclude Expert Testimony — **Doc. 544**
- MOO Denying Motion to Dismiss for Outrageous Government Conduct — **Doc. 570**
- MOO Denying Motion to Dismiss Terrorism Counts as Vague — **Doc. 578**
- MOO Denying Motion to Dismiss of § 922(g) Under Commerce Clause — **Doc. 665**
- MOO Denying Motion to Dismiss of § 922(g) Under *Bruen* — **Doc. 666**
- MOO Denying in Part Suppression of Children's Statements — **Doc. 710**
- MOO Denying Motion to Dismiss Kidnapping for "No Crime" — **Doc. 739**
- MOO Denying Suppression of Search for Lack of Standing — **Doc. 778**
- MOO Denying Motion to Dismiss for Speedy Trial Violations — **Doc. 831**
- MOO Denying Defense Request to Exclude Proffered Lay Witness — **Doc. 879**
- MOO Denying Motion to Sever Trials — **Doc. 880**
- MOO Granting in Part Cross-Motions to Limit Expert Testimony — **Doc. 910**
- MOO Granting Exclusion of Defense Expert — **Doc. 912**
- MOO Denying Defendant's Request to Prevent Use of Term "Compound" — **Doc. 957**
- MOO Granting and Denying in Part Admission of Coconspirator Statements — **Doc. 962**
- MOO Granting and Denying in Part USA Motion to Exclude Arguments — **Doc. 969**

Additionally, the Court issued several Orders on stipulated evidence (**Docs. 906 & 960**). Leading up to trial, the Court also heard several rounds of arguments on jury instructions (**Docs. 865, 869, 898, 920, 974, 983, 996**). After the Court published proposed final jury instructions (**Doc.**

4

**1000**), the Court heard more argument before issuing the Court's final jury instructions (**Doc. 1001**). The Court even supplemented its oral ruling on jury instructions (**Doc. 1002**).

After trial concluded, the filings continued. Since the jury returned its verdicts on October 17, 2023, the Court received the following filings that required written rulings:

- Subhanah Wahhaj and Hujrah Wahhaj's Motion for Post-Trial JOA — **Doc. 1044**
- Lucas Morton's Motion for a New Trial — **Doc. 1050**
- Subhanah Wahhaj and Hujrah Wahhaj's 8th Amendment Objection — **Doc. 1112**
- Hujrah Wahhaj's PSR Objections — **Doc. 1115**
- Hujrah Wahhaj's Second PSR Objections — **Doc. 1130**
- Hujrah Wahhaj's Motion for Reconsideration — **Doc. 1135**
- Subhanah Wahhaj's Amended PSR Objections — **Doc. 1141**
- Lucas Morton's PSR Objections — **Doc. 1146**

It does not matter if one subscribes to "quality over quantity" or "quantity over quality," the defense lawyers involved in this case all performed in an exemplary manner. As explained below, the Court concludes counsel behaved, filed, argued, and prepared in an objectively reasonable manner. Their performance was proficient—not deficient.

## DISCUSSION

> Some decisions are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal . . . . Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a trial.

*McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (cleaned up). As the Court mentioned at the sentencing hearing, this quotation from Justice Ruth Bader Ginsburg's majority opinion is appropriate here. Defendants' counsel filed a litany of motions—several of which the Court granted. At sentencing, the Court also learned Defendants' counsel had negotiated favorable plea agreements—which Defendants rejected. Defendants (Subhanah Wahhaj and Hujrah Wahhaj)

were offered plea agreements that, if accepted, would have resulted in Defendants receiving time-served sentences of approximately five years' incarceration (**Docs. 643-1 & 644-1**).

What prompted the Court to issue this opinion? Quite simply, it was the Defendants' sentencing allocution. Defendants (Hujrah Wahhaj and Subhanah Wahhaj) blamed their counsel for ineffective assistance and collusion with the Government—calling it an "unholy alliance." And although Siraj Ibn Wahhaj didn't blame counsel (ostensibly because he was *pro se*), he still complained of collusion between the United States and standby counsel.[3] These statements are as meritless as Defendants' prior assertions of outrageous Government conduct (**Docs. 476 & 525**). To the extent a summary of counsels' efforts, successes, and actions are known to the Court—they are documented to nip these erroneous attributions in the bud.

The plea offers extended by the United States to Defendants were filed under seal and made part of the record (**Docs. 643, 644, 668**) at the *Lafler-Frye* hearings conducted by the Magistrate Judge in order to make a record, under seal, that the Defendants were: (1) offered plea agreements, (2) that their counsel explained the terms of the plea agreements, (3) that they understood the terms of the plea offers, and (4) and that they made the informed and voluntary decision to reject those plea offers and proceed to trial. At sentencing—and over the Government's objection—counsel for Defendants made reference to the fact that the Government extended plea offers that had they been accepted would have resulted in Defendants being released from custody in approximately February of 2023.[4] Instead, these two Defendants exercised their right to proceed to trial by jury. And once the jury returned guilty verdicts on the Counts charging kidnapping of a child resulting in death, the Court had to impose the statutory minimum sentence of life in prison.

---

[3] For what it's worth, Defendant Siraj Ibn Wahhaj was offered a specific sentence of 10–15 years (**Doc. 668-1**).

[4] Although the Court was previously unaware of the specifics of the plea agreements offered, the Court accepts defense counsels' representations that Hujrah Wahhaj and Subhanah Wahhaj were extended offers that would have resulted in time-served sentences. This proffer by counsel is also supported by the sealed *Lafler-Frye* filings.

At sentencing, when Defendants made their statements, they trashed their defense lawyers asserting that they were ineffective and even complained that their lawyers tried to pressure them into accepting the United States' time-served plea offers. On a personal note, while the undersigned has over 29 years of judicial experience presiding over felony criminal cases in the federal and state courts, the undersigned never served as a criminal defense lawyer representing defendants charged with felony level crimes. Consequently, the undersigned never suffered the indignity of a criminal defendant trashing the quality of a criminal defense lawyer's services and representation at a sentencing hearing. While the Court agrees with the United States that the time-served plea offers extended to Defendants were not relevant at sentencing, two conclusions can be drawn from those time served plea offers. First, counsel for Defendants were extraordinarily effective in negotiating such favorable plea offers for their respective clients.  Second, in a felony criminal case where the Government can easily meet its burden of proof, any experienced criminal defense lawyer would strenuously attempt to convince a client to take a time-served plea offer instead of proceeding to trial—whereupon conviction, the statutorily required sentence of life in prison must be imposed. Furthermore, the extraordinarily effective assistance provided by counsel for Defendants in this case did not end with plea negotiations. Defense counsel aggressively and zealously represented their clients and were successful in obtaining not guilty verdicts on the two counts charging Defendants with providing material support to terrorists and conspiracy to provide material support to terrorists (**Docs. 1011 & 1014**). The jury's guilty verdicts on the two kidnapping Counts, based on overwhelming evidence of guilt, does not diminish the extraordinary legal representation provided to Defendants by their defense counsel. Simply stated, in terms of representing these Defendants, defense counsel left it all on the field.

**I. Speedy Trial Complaints**

About a month after the Complaint was filed, the Court granted an unopposed motion (**Doc. 47**) designating this case complex (**Doc. 49**). It's a truism that large, multidefendant conspiracies with vast discovery are inherently complex. *See United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023) (designating a case complex due to "the nature of large, multidefendant conspiracies with vast discovery"); *United States v. Margheim*, 770 F.3d 1312, 1327 (10th Cir. 2014); *United States v. Occhipinti*, 998 F.2d 791, 797 (10th Cir. 1993). Plus, the Defendants along with their three co-Defendants, as co-conspirators, needed to be tried together. *See* Fed. R. Crim. P. 8; **Doc. 880**. "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (cleaned up).

At sentencing, Defendants opined that this case was "not complex." Contrary to Defendants' opinions, every aspect of this case was complex. This case involved multiple conspiracies with multiple defendants and discovery involved "hundreds of thousands of records." **Doc. 47 at ¶ 11**. The unopposed complex designation alone resolves Defendants' speedy trial complaints. *See* 18 U.S.C. § 3161(h)(7)(B)(ii).[5] Nevertheless, the Court also addresses the timeline.

- All five Defendants were indicted on September 11, 2018 (**Doc. 25**). Then on October 2, 2018, the United States requested the case be designated complex (**Doc. 47**). Trial was set for April 13, 2020 (**Doc. 74**). Twenty days had elapsed.

---

[5] Indeed, Defendants expressly acknowledged the complexity of the case again in their Joint Motion to Appoint Coordinating Discovery Attorney (**Doc. 226**). The Joint Motion stated "[a] Coordinating Discovery Attorney reduces the time and money expended by appointed counsel in organizing, storing, and reviewing voluminous discovery in ***complex matters like this one***." *Id.* **at 3** (emphasis added). The Court ultimately granted the Defendants' Joint Motion (**Doc. 229**).

- All five Defendants were charged by Superseding Indictment (**Doc. 85**) on March 14, 2019. The parties agreed that the April 2020 trial date should be vacated and rescheduled (**Doc. 172**). In December 2019, the Court reset the trial for October 14, 2020. No speedy trial time had passed given the pretrial motions and complex case designation. This scheduling order was not objected to.

- Around the same time, four of the five Defendants moved for competency evaluations (**Docs. 111, 174, 176, 179**). This time was clearly excludable. 18 U.S.C. § 3161(h)(1)(A), (h)(4). In fact, the Court granted a joint defense motion to stay all proceedings pending the resolution of the competency determinations (**Docs. 189 & 192**). Again, no speedy trial time elapsed.

- The joint motion to lift the stay was filed on May 30, 2022 (**Doc. 416**), and the stay was lifted on October 14, 2022 (**Doc. 464**). A month later the trial was set (**Doc. 529**).

Despite Siraj Ibn Wahhaj's "change of heart" (**Doc. 388 at 2**), none of Defendants' assertions[6] of speedy trial are of consequence. Defendants jointly requested one continuance, jointly requested a stay, and then did not—originally—oppose the September 2023 trial date (**Docs. 512 & 529**). In fact, within a month of lifting the competency stay, Defendants had a firm docketed trial date and that date is when the jury trial commenced.

Between the competency evaluations, a joint stay, a global pandemic, and pretrial motions, only a negligible amount of time under the Speedy Trial Act truly passed. In the Court's estimation,

---

[6] Siraj Ibn Wahhaj asserted speedy trial multiple times (**Docs. 298, 324, 341, 345, 397, 410, 439, 477, 481, 795**). But he only did so after joining the complex case designation (**Doc. 47**) and failing to oppose the resetting of the April 2020 trial date (**Doc. 172**). Although his assertions were frequent, they were also delayed and without significant force. Here, Defendant Siraj Ibn Wahhaj filed seven assertions of his speedy trial right after he joined the motion for a stay of the proceedings (**Doc. 189**). The Court issued a Memorandum Opinion and Order (**Doc. 388**) denying his flip-flopping (**Docs. 189, 192, 350**) of positions on speedy trial. After the September 2023 trial date was set, Defendants continued to assert their speedy trial rights (**Docs. 477, 481, 484, 603, 634, 795**). The Court resolved these issues in a Memorandum Opinion and Order on July 6, 2023 (**Doc. 831**). *See Barker v. Wingo*, 407 U.S. 514, 529–32 (1972) (juxtaposing the "frequency" of a Defendant's assertion with the "force" of their assertion based on conduct).

approximately thirty nonexcludable days elapsed from indictment to trial. The remaining days were properly excluded (and documented).

Defendants' assertions that their speedy trial rights were violated are without merit.

## II. Alleged Fourth Amendment Violations

Defendants contend that their Fourth Amendment rights were violated. But the Court already resolved these issues—and they were extensively litigated.

First, Defendants filed pleadings seeking to exclude the children's statements to law enforcement (**Docs. 482 & 588**). The Court ultimately agreed that the statements were hearsay and inadmissible as direct evidence at trial (**Doc. 710 at 8**). At the same time, the Court allowed these prior statements for impeachment and refreshing recollection purposes. *Id.* **at 8–9**. Defense counsel also filed a joint motion seeking to suppress all evidence from the search of Defendants' residence (**Docs. 471, 472, 586, 689, 725**). Unfortunately, as the Court explained, Defendants did not have Fourth Amendment "standing"[7] because the land on which they were residing was not their land (**Doc. 778**). Because Defendants could not adduce facts that their own rights were violated, their motion failed (***Id.* at 13**). *See United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989).

While the Court understands the Defendants may feel their rights were violated, the law says otherwise. These Fourth Amendment arguments are, once again, without merit.

## III. Outrageous Government Conduct Complaints

Defendant Subhanah Wahhaj claimed her counsel was involved in "an unholy alliance." Defendant Hujrah Wahhaj stated the crime was "created" by the United States. Defendants'

---

[7] "Standing" in the Fourth Amendment context is not jurisdictional—instead it refers to the substantive doctrine that a Defendant may not seek to exclude evidence based upon the Government's violation of someone else's rights. *Byrd v. United States*, 584 U.S. 395, 410 (2018) (explaining "Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine"); *United States v. White*, 584 F.3d 935, 952 n.7 (10th Cir. 2009).

combined commentary at sentencing echoed their filings from the "Outrageous Government Conduct" pleadings (**Docs. 476, 525, 553**). Siraj Ibn Wahhaj restated his complaint that law enforcement's motive was to deprive the Defendants of their children (**Doc. 476 at ¶ 32**). And Defendants Subhanah Wahhaj and Hujrah Wahhaj echoed the allegations that the Government's conduct was "immoral, outrageous, and shocking to the conscience." *Id.* **at 1**.

Despite their firmly held beliefs, Defendants' opinions are "without factual or legal merit." **Doc. 502 at 1**. Defendants' arguments are as unavailing now as they were when first made (**Doc. 570**). The United States did not create the crimes or coerce the Defendants. "No government actor induced Defendants to kidnap John Doe; no government actor suggested it, or encouraged it, or arranged for it to be done." *Id.* **at 7**. The choice was theirs and theirs alone.

Assertions of a deep-state governmental conspiracy waged against the Defendants are baseless. Nevertheless, even in the "face of overwhelming evidence," it is the Defendants' right to "insist on maintaining [their] innocence." *McCoy*, 584 U.S. at 422.

## IV. Allegations Levied at Counsel

During the course of litigation, Hujrah Wahhaj was displeased with her attorneys—and four were terminated. One of Subhanah Wahhaj's attorneys was also terminated and replaced. All six of Siraj Ibn Wahhaj's attorneys were terminated—and he chose to represent himself (**Docs. 745 & 786**). In total, all five Defendants at various times were represented by a total of twenty-two attorneys.

At sentencing, Defendants explained they were displeased with their counsel. All of them; each and every lawyer. Apparently, no one could live up to the Defendants' expectations. This is

probably because lawyers are not fully at the beck and call[8] of their clients. They are also officers[9] of the court. *See United States v. Calderon*, 428 F.3d 928, 931 (10th Cir. 2005) (explaining defense counsel are ethically bound to their client, but also to the court); *United States v. Franklin*, 178 F. App'x 776, 778 (10th Cir. 2006) (unpublished) (stating counsel are duty bound to "act as an advocate" for their client, but also have a duty to the court); *United States v. Litchfield*, 959 F.2d 1514, 1517 (10th Cir. 1992) (discussing defense counsel's "conflict between his ethical duty to this client and to the court"). Attorneys are not obligated to make every argument the client wants, nor are they obligated to file every pleading asked of them. *United States v. Dawes*, No. 88-cr-10002, 1989 U.S. Dist. LEXIS 11046, at *3 (D. Kan. Aug. 29, 1989). Instead, most choices by counsel are entitled to a "virtually unchallengeable presumption of reasonableness." *Newmiller v. Raemisch*, 877 F.3d 1178, 1197 (10th Cir. 2017). To this end, "giving the attorney control of trial management matters is a practical necessity. The adversary process could not function effectively if every tactical decision required client approval." *United States v. Oakes*, 680 F.3d 1243, 1248 (10th Cir. 2012) (quoting *Gonzalez v. United States*, 553 U.S. 242, 243 (2008)). And, in so doing, a lawyer's decisions—for example—on what motions should be made are the "exclusive province of the lawyer after consultation with the client." *Alvord v. Wainwright*, 469

---

[8] *See Nunez v. United States*, 495 F.3d 544, 547 (7th Cir. 2007) (Easterbrook, C.J.) (dispelling of the notion that "a lawyer is the client's puppet"); *United States v. Braddy*, 2023 U.S. App. LEXIS 12192, at *2 (3d Cir. 2023) ("[he] is your lawyer and not your servant"); *United States v. Robertson*, No. 20-cr-419, 2022 U.S. Dist. LEXIS 169363, at *14–15 (E.D. Penn. Sep. 19, 2022) ("The defendant has been reminded . . . that his lawyers are not puppets who must blindly follow his instructions to file motions and issue subpoenas they do not believe are ethically appropriate or legally supported by the facts."); *Hamilton v. Brunsman*, No. 09-cv-295, 2010 U.S. Dist. LEXIS 142947, at *9 (S.D. Ohio June 10, 2010) ("An attorney's oath binds him to be an officer of the court, not a 'mouthpiece' for whatever his client wants him to convey.").

[9] This point piggybacks, in part, off the previous section regarding outrageous Government conduct. Defendants appear to be under the mistaken assumption that an attorney's role as an officer of the Court creates a conflict. The Court is unaware of any case that holds a lawyer's obligations under the rules of professional responsibility create any conflict between a client and her lawyer. In fact, being an officer of the court is a prerequisite for representing a criminal defendant. *See* 7 CORPUS JURIS SECUNDUM § 4 (2017) ("The attorney's first duty is first to the court and public, not to the client, and wherever the duties to his client conflict with those he owes as an officer of the court in the administration of justice, the former must yield to the latter.").

U.S. 956, 959 n.4 (1984); *see also United States v. Afflerbach*, 754 F.2d 866, 870 (10th Cir. 1985) ("The attorney's decision not to file all motions requested by his clients was not ineffective assistance of counsel.").

Nevertheless, Defendants' lawyers achieved phenomenal results—obtaining acquittals on two Counts (**Docs. 1011 & 1014**). Prior to that, defense counsel negotiated incredibly favorable plea agreements (**Docs. 615, 619, 622, 643, 644**). Although the Court was previously unaware of the terms of the plea offers, at sentencing counsel explained that the plea offers for Defendants were for "time served."

As mentioned above, the right to reject a plea offer is a decision left up to a criminal defendant. And in this case, Defendants exercised their right to reject the Government's plea offers and proceed to trial.

Nevertheless, at sentencing, Defendants complained that counsel encouraged them to accept the plea offers. But attorneys are allowed to apply "palpable pressure to encourage a client to accept a plea." *United States v. Ellis*, 201 F. App'x 588, 591 (10th Cir. 2006) (unpublished). Here, in particular, the Court notes that it would have been ineffective assistance to advise them otherwise. Defendants knew they were facing possible mandatory life sentences if convicted on the kidnapping resulting in death of a child counts. Although attorney-client communications are privileged, the Court is confident that defense counsel made the Defendants aware of the consequences if they were convicted on the kidnapping charges. On this point, the Court recalls that the Government informed both Hujrah Wahhaj (**Doc. 699**) and Subhanah Wahhaj (**Doc. 338**) of the charges and potential penalties during their *Faretta* hearings—conducted after the Defendants filed motions to proceed *pro se* or appoint new counsel (**Docs. 221 & 682**). The deals on the table would have allowed Defendants to be released from custody instead of having to spend

the rest of their lives in prison. Negotiating a plea for a time-served sentence is objectively reasonable performance—if not laudatory performance.

Once again, the Court turns to Justice Ginsburg's opinion in *McCoy*: "Some decisions are reserved for the client—notably, whether to plead guilty . . . . Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her . . . so may she insist on maintaining her innocence." Nothing is wrong with the fact Defendants desire to maintain their innocence. Yet, negotiating a time-served deal and then achieving acquittals are—quite candidly—fantastic results. Defendants are free to complain about the results of their life in prison sentences, but these results are not the product of poor performance by counsel.

## CONCLUSION

In this Court's opinion, the attorneys' performance was objectively reasonable and efficacious. Moreover, the issues Defendants complained about at sentencing were briefed, argued, and preserved by the very counsel with whom they are so confusingly displeased.

To the extent Defendants' statements at sentencing could be construed as oral motions requesting relief from this Court, those requests are **DENIED**. Many adjectives can describe the performance of defense counsel in this case, but ineffective is not one.

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE